Christopher HAILE, Plaintiff,

v.

VILLAGE OF SAG HARBOR, Town of Southampton, Chief of Police John Harrington, Sgt. John McMahon, Sag Harbor Police Officers James Eberhart, Billy Beyer, Michael Salago and Steven McLaughlin and Southampton Police Officers Eric Blazebrook, Robert Iberger, Richard Norton, John Moran, Douglas Carlsen, William Oliver, William Thum, Walter Britton, Guy Drinkwater, Bruce Molloy, Sgt. Thomas Peyton, S.P.O.'s Richard Olmstead, Richard Spera, Jamie Gilpin, Gerald Buckley, Kevin Connally, Richard Norbeck, John Bandrowski, Jose Montanez, O.I. Stephen Frane and O.I. Howard Korten, Defendants.

No. 85 Civ. 3176.

United States District Court, E.D. New York.

July 14, 1986.

Stevens, Hinds & White, P.C., New York City, for plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Town of Southampton and Members of Southampton Police Dept.

Alio & Beesecker, New York City, for Village of Sag Harbor and Members of Sag Harbor Police Dept.

MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Christopher Haile brought this action against the Village of Sag Harbor ("Sag Harbor") and several of its police officers ("the Sag Harbor defendants") and the Town of Southampton ("Southampton") and several of its law enforcement officers ("the Southampton defendants") asserting a variety of claims under the federal civil rights laws as well as pendent state law claims. The action is before the Court on the motion of the Southampton defendants to dismiss plaintiff's claims against them for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and/or for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendants' motion will be granted in part and denied in part.

Plaintiff was arrested in the early morning on August 25, 1984 in the Village of Sag Harbor. Plaintiff's claims against the

Southampton defendants stem from plaintiff's allegation that this arrest was carried out with excessive force, specifically, that his jaw was broken. Defendants' motion to dismiss these claims is divided into six parts. The Court will address each aspect of this motion in turn.

### I. *The Individual Defendants*

■ Plaintiff has named as defendants twenty-one (21) police officers and fire marshals who were employed by Southampton on the date of his arrest. Each of these defendants has moved for dismissal. On the basis of their log entries for the evening in question, eighteen (18) of these defendants assert that they were not present at the time of plaintiff's arrest. The three remaining defendants assert that they were present for some of the time while plaintiff was being arrested but were not involved in that arrest nor in the use of any excessive force that may have taken place. In addition, defendants have identified a fourth officer, not sued by plaintiff, who was present at the scene.

With respect to the eighteen defendants who allege that they were not present during plaintiff's arrest, the Court finds, as it stated at oral argument, that they should be dismissed as defendants. In initiating this action, plaintiff named as defendants all of the law enforcement personnel employed by Southampton who were on duty at the time of his arrest. Although plaintiff concedes that only some of these officers were present at the time, plaintiff adopted this litigation strategy because he did not know the identity of those officers who are alleged to have taken part in his arrest. In response to this blunderbuss approach, defendants have attempted to identify those who could not possibly have done any wrong to plaintiff because of their absence from the scene. Insofar as the number of officers who have admitted their presence roughly accords with plaintiff's recollection, the Court will assume for purposes of this motion that Southampton's attempt to identify potential defendants has been made in good faith and will dismiss the others. This dismissal is without prejudice; should the discovery process, including the depositions of these officers if the plaintiff so desires, uncover evidence that any of them were involved in the violation of plaintiff's rights, plaintiff may restore them as defendants. In the absence of such evidence, however, the Court concludes that justice would not be served by retaining each and every officer as a party to this action.

At the same time, the Court will deny the motion to dismiss the defendants who admittedly were present at the scene of plaintiff's arrest. Because defendants' motion relies on affidavits, the Court is obliged to treat it as a motion for summary judgment. Fed.R.Civ.P. 12(b). In light of the fact that little or no discovery has been taken, the Court finds that summary judgment is premature. Fed.R.Civ.P. 56(f). Moreover, even assuming the truth of defendants' statements to the effect that *they* did not use excessive force, plaintiff has cited authority for the proposition that law enforcement officers have a duty to intervene when fellow officers use excessive force against a detainee. *See, e.g., Ware v. Reed,* 709 F.2d 345, 353 (5th Cir.1983). Defendants attempt to distinguish *Ware* by arguing that, in the circumstances of this case, some force was legitimately used and the defendants had a countervailing duty to assist the arresting officers. Whether or not this is a convincing legal argument, it depends on factual assumptions contrary to plaintiff's allegations, thus underscoring the inappropriateness of summary judgment at this stage of the litigation.

### II. *The Conspiracy Claims*

■ Plaintiff's third and fourth causes of action claim violations of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986, respectively. Section 1985(3) provides in pertinent part:

If two or more persons ... conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so

injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. A cause of action under this section has four elements: (1) a conspiracy; (2) for the purposes of depriving any person of equal protection of the laws or of equal privileges and immunities; (3) an act in furtherance of the conspiracy; (4) an injury to person or property or deprivation of a right or privilege. *Carpenters v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckinridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

In addition to the requirements just stated, there must be "some racial ... invidiously discriminatory animus behind the conspirator's action." *Griffin, supra,* 403 U.S. at 102, 91 S.Ct. at 1798 (footnote omitted). To meet this requirement, plaintiff, who is white, puts forth the following theory: plaintiff was arrested after attending a Tina Turner concert, whose audience, plaintiff contends, was racially integrated. Plaintiff alleges:

> Defendants ... acted out of a racial animus directed against Blacks and against all persons who participate in racially integrated social and entertainment events.

Plaintiff's Complaint at ¶ 46. Plaintiff adds:

> Plaintiff is unpopular with the Sag Harbor police because of their aforesaid racial animus, since his residence in Sag Harbor is in a section of the community regarded as a Black and American Indian neighborhood.

Plaintiff's Complaint at ¶ 47. Plaintiff argues that "these pleadings are sufficient to plead a racial animus against a person whose conduct defies racist 'color-lines.'" Plaintiff's Brief at 16.

Without expressing an opinion on the sufficiency of this theory under the cases interpreting § 1985, the Court finds that, with respect to the Southampton defendants, plaintiff's claim is insufficient as a matter of pleading. It is well settled that vague and conclusory allegations of a conspiracy are insufficient to state a claim under § 1985. *See, e.g., Catholic War Veterans v. City of New York,* 576 F.Supp. 71, 75 (S.D.N.Y.1983) (citing cases). *Waller v. Butkovich,* 584 F.Supp. 909, 931 (M.D.N.C. 1984), a case on which plaintiff relies, requires that a plaintiff "expressly allege an agreement or make averments of 'communications, consultation, cooperation, or command' from which such an agreement can be inferred." With respect to the Southampton defendants, plaintiff's allegations fail to meet this standard. Plaintiff does not allege that these defendants harbored any animus against him, much less that they acted on this animus to form a conspiracy to violate his rights. The allegation that defendants were present at the scene of plaintiff's arrest, or even that they participated in that arrest, is simply not enough from which to infer that defendants had agreed to become part of a conspiracy of the kind and for the reason that is redressable under § 1985(3).

In view of this conclusion, plaintiff's claim against the Southampton defendants pursuant to 42 U.S.C. § 1986 must also be dismissed:

> Section 1986 provides that any person with knowledge of a conspiracy to deprive others of their constitutional rights, and having power to prevent such conspiracy, and who neglects or refuses to prevent it, and wrongful acts are ultimately committed, will be liable to the parties injured. This provision is read in conjunction with Section 1985, so that, absent a legitimate claim under Section 1985, a plaintiff is without a claim for relief under Section 1986.

*Thompson v. State of New York,* 487 F.Supp. 212, 228–29 (N.D.N.Y.1979).

### III. *The Municipal Defendant*

■ Under *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), a municipality sued pursuant to 42 U.S.C. § 1983 may not be held liable for the acts of an employee on the basis of *respondeat*

*superior,* but only on proof that some municipal policy caused the plaintiff's injury. Mindful of the limitation imposed by *Monell,* the plaintiff has alleged, *inter alia,* that the municipal defendants, the Village of Sag Harbor and the Town of Southampton

> have promulgated a *de facto* policy of permitting their police officers to use excessive and unjustified force by failing to provide, by regulation or otherwise, any mechanism for investigating or punishing, excessive or unjustified force by police officers, and by failing to provide, by regulation or otherwise, any mechanism by which a civilian can effectively bring [to] the attention of the authorities the excessive or unjustified use of force by a police officer.

Plaintiff's Complaint at ¶ 54. There seems little question that, as a purely legal matter, proof of the policy alleged would subject Southampton to liability for plaintiff's injuries. In a recent case, the Second Circuit has upheld a finding of municipal liability on the theory that the municipality

> was knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by the failure of the [municipality] to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force.

*Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319, 326 (2d Cir.1986). On the basis of *Fiacco* the Court would be inclined to uphold plaintiff's claim as legally sufficient against a motion to dismiss pursuant to Rule 12(b)(6).

Southampton contends, however, that to survive a motion to dismiss,

> Plaintiff must set forth a particularized factual pleading specifying "the overt acts relied upon as a basis for the claim that a pattern of unconstitutional actions exists and the senior officials of the town knew of the unconstitutional actions and encouraged their repetition by inaction."

*Finkelstein v. City of New York,* 543 F.Supp. 161, 163 (S.D.N.Y.1982) (*quoting Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978)). The Court finds that, in contrast to the treatment of claims asserted under 42 U.S.C. § 1985, *see* p. 6 *supra,* recent Second Circuit authority does not impose an enhanced pleading requirement with respect to claims under 42 U.S.C. § 1983. In *Batista v. Rodriguez,* 702 F.2d 393 (2d Cir.1983), in the midst of a discussion of municipal liability, the Court stated:

> A plaintiff, suing under § 1983 ... is not required to set out the facts in detail. The complaint will survive dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

702 F.2d at 397 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Pitt v. City of New York,* 567 F.Supp. 417, 419 (S.D.N.Y. 1983) (holding that *Batista* "casts considerable doubt upon the vitality of" *Finkelstein* and *Smith* ). Accordingly, the motion to dismiss will be denied.

Insofar as this motion seeks summary judgment, the Court again finds that this request is premature. *See* pp. 3–4 *supra.* Southampton may renew its motion for summary judgment on the issue of municipal liability at the close of discovery.

### IV. *Constitutional Claims*

■ The fourth part of defendants' motion speaks to plaintiff's allegations that his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments were violated. Insofar as this aspect of defendants' motion seeks dismissal of plaintiff's first cause of action (in which this list of constitutional rights is recited, *see* Plaintiff's Complaint at ¶ 39), the motion will be denied. It is the law of this Circuit that "application of undue force by law enforcement officers deprives a suspect of liberty without due process of law." *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94

S.Ct. 462, 38 L.Ed.2d 324 (1973); *Dodd v. City of Norwich*, 603 F.Supp. 514, 516 (D.Conn.1984). Under these precedents, plaintiff's first cause of action, which alleges the use of such force during plaintiff's arrest, states a claim cognizable under 42 U.S.C. § 1983 for deprivation of his rights under the Fourteenth Amendment. In light of this fact, the Court need not decide whether the other constitutional provisions cited provide an independent basis for upholding this cause of action, *see, e.g., Kidd v. O'Neil*, 774 F.2d 1252, 1255 (4th Cir.1985) (holding that the use of excessive force by the police violates the Fourth Amendment), or are instead surplusage.

■ Insofar as this aspect of defendants motion seeks dismissal as to them of plaintiff's second and sixth (mislabeled fifth) causes of action, the motion will be granted. Plaintiff's second cause of action, as the Court understands it, alleges an unconstitutional failure to provide medical care arising from the fact that plaintiff was transported to the Sag Harbor police station to be charged before being brought to a hospital for treatment of the injuries allegedly sustained during his arrest. Plaintiff's sixth cause of action, *see* Plaintiff's Complaint at ¶¶ 59–64, alleges that, following his arrest, he was made the subject of false charges in a criminal information. Although plaintiff's complaint asserts these claims against all defendants, there is no real suggestion, either in the complaint or in plaintiff's answering papers on this motion, that the Southampton defendants played any part in the events following plaintiff's arrest. Accordingly, these claims should be dismissed against them.

## V. *Punitive Damages*

■ Under § 1983, punitive damages are not recoverable against municipalities, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), but are recoverable against individual officials. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). In this case, plaintiff has not sought punitive dam-

ages against either of the municipal defendants. The Southampton defendants argue, however, that because state law, Gen. Mun.Law 50–j (McKinney 1986), requires the municipality to indemnify its police officers, the municipal defendant is the real party in interest and, therefore, the claim for punitive damages against the individual defendants must be stricken. The Court finds no merit to this argument.

In *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984), the Seventh Circuit rejected a similar argument. In *Bell*, several individual defendants had been found liable to pay punitive damages. Under Wisconsin law, the municipality was required to indemnify these individuals. In order to avoid having to pay these damages, the municipality argued that the decision in *City of Newport, supra,* served to override the state indemnity statute. The Seventh Circuit rejected this argument, pointing out that the Supreme Court in *City of Newport* had noted the existence of state indemnification statutes, 453 U.S. at 269 n. 30, 101 S.Ct. 2761 n. 30, and had thus impliedly recognized that a municipality could end up paying punitive damages because of the operation of state law. 746 F.2d at 1271.

Defendants' argument, which is more extreme than the one put forth in *Bell*, must also be rejected. In *Bell*, the municipality sought to prevent a shift of liability from the individuals to it. Here, defendants seek to bar liability for punitive damages altogether. This result is wholly unjustified. The Supreme Court in *City of Newport* held simply as a matter of statutory construction that the Congress which enacted the original civil rights statute did not intend to create a punitive damages remedy against municipalities. At the same time, the Court in *Smith v. Wade, supra,* found that that same Congress did intend that plaintiffs in civil rights suits could recover punitive damages in appropriate circumstances against non-municipal defendants. To accept defendants' argument would require the Court to misread *City of Newport*, which expressed no view on the allocation of liability under state

**724**

law, and would serve to emasculate *Smith v. Wade* by allowing state law to nullify a federal remedy. If defendants' view were correct, then any state could, in the guise of adopting an indemnity statute, thereby guarantee that no punitive damages could ever be recovered. Finding no merit in this view, defendants' motion will be denied.

### VI. *Attorney's Fees*

The last part of defendants' motion seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988. As defendants recognize, a successful defendant is entitled to such an award "only if the court finds that the plaintiff's claim 'was frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so.'" *Colombrito v. Kelly*, 764 F.2d 122, 128 (2d Cir.1985) (*quoting Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978)). Applying this standard at this stage of the litigation, the Court concludes that defendants are not entitled to fees.

### *Conclusion*

Plaintiff's complaint is dismissed as to defendants Blazebrook, Iberger, Norton, Moran, Carlsen, Oliver, Thum, Britton, Drinkwater, Molloy, Peyton, Spera, Gilpin, Buckley, Connally, Bandrowski, Montanez and Frane. Plaintiff's second, third, fourth and sixth causes of action are dismissed as to the Southampton defendants. All other aspects of defendants' motion are denied.

SO ORDERED.